**E-Filed 7/26/2010**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| BECKMAN COULTER, INC., a Delaware corporation,<br><br>        Plaintiff,<br><br>    v.<br><br>BECKCOULT.COM, a Domain Name, and DOES 1 through 20, inclusive,<br><br>        Defendants. | Case Number C 10-03110 JF (PVT)<br><br>**ORDER GRANTING PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION** |

Plaintiff seeks a temporary restraining order ("TRO") and a preliminary injunction to prevent Defendants from infringing Plaintiff's trademark and intellectual property rights. The Court has considered the moving papers, declarations, and exhibits presented by Plaintiff's counsel. For the reasons discussed below, a TRO will be granted. A hearing on Plaintiff's motion for a preliminary injunction will be set for August 6, 2010 at 9:00A.M.

## I. BACKGROUND

Plaintiff Beckman Coulter ("Plaintiff") filed the instant action on July 15, 2010. The dispute arises out of Defendants' alleged use of a website that is essentially identical to

1  Plaintiff's.  Plaintiff alleges that Defendants' use of the website violates the Anticybersquatting
2  Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d)(2), Section 32(a) of the Lanham Act,
3  15 U.S.C. § 1114(1), Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), (b), Section 43(c)
4  of the Lanham Act, 15 U.S.C. § 1125(c), California Common Law Trademark Infringement,
5  Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d), Unfair Competition and False
6  Designation of Origin Law, Cal. Bus. & Profs. Code §§ 17200 & 17500.  (Compl. ¶¶ 1-2.)

7  Plaintiff is a Delaware corporation with its principal place of business in Brea,
8  California.  (Compl. ¶ 6.)  For approximately seventy-five years, Plaintiff and its predecessors
9  have manufactured and sold products used in biomedical testing.  (Compl. ¶ 12.)  Plaintiff sells
10 its biomedical testing equipment and products through a variety of marketing channels,
11 including its principal website *www.beckmancoulter.com*.  (Compl. ¶¶ 13-14.)  Plaintiff also
12 maintains a website at *www.coulterflow.com*. (Compl. ¶ 14.)  The latter website has an
13 electronic commerce feature which allows Plaintiff's customers to order products by creating
14 and accessing customer accounts using unique passwords.  (Compl. ¶ 14; Pl.'s Mem. 3)

15 Plaintiff depends upon both the quality of its products and the reliability of its brand, and
16 it has spent substantial sums to secure and protect its intellectual property interests.  (Compl. ¶
17 16.)  Plaintiff has obtained numerous federal trademark registrations to protect the value of its
18 Beckman Coulter® brand in connection with its medical testing equipment, including federal
19 registrations Nos. 2,742,502, 2,756,542, 2,884,295, and 2,970,877.  (Compl. ¶ 17.)
20 Beckcoult.com is a domain name registered through the registrar Melbourne IT, Ltd. d/b/a
21 Internet Names Worldwide, a company located in Australia (the "Registrar").  (Compl. ¶ 7.)
22 The Beckcoult.com domain name resides with Verisign, Inc. ("Verisign"), which is exclusively
23 responsible for maintaining the <.com> registry.  (Compl. ¶ 7.) Verisign's principal place of
24 business is in Mountain View, California.  (Compl. ¶ 7.) Defendants DOES 1-10 are individuals
25 of unknown residence and citizenship.  (Compl. ¶ 8.) Defendants DOES 11-20 are corporations
26 of unknown places of incorporation.  (Compl. ¶ 9.)

27 On or about May 15, 2010, the Doe Defendants registered the Beckcoult.com domain
28 name  under one or more false identities.  (Compl. ¶ 29.)  Later that same month, Plaintiff was

notified by third parties that unauthorized entities were using the Beckcoult.com domain name to pose as Plaintiff as part of a "phishing fraud" scheme allegedly designed to defraud third-party Internet users. (Pl.'s Mem. 3) Since that time, several other third-party internet users have reported receiving emails from an individual using an email address incorporating the Beckcoult.com domain name. (Compl. ¶ 33.) Specifically, on May 19, 2010, a third party was sent an email from someone posing as one of Plaintiff's employees seeking price quotes for computer networking equipment. (Compl. ¶ 33.) Although the email purports to originate from Plaintiff, it was not sent by anyone affiliated with or authorized by Plaintiff. (Compl. ¶ 33; Pl.'s Mem. 4) Plaintiff contends that the Beckcoult.com domain name furthers the phishing fraud scheme by creating the false appearance that an email had been sent by someone affiliated with or authorized by Plaintiff. (Pl.'s Mem. 4) It appears that the goal of this scheme is to facilitate the unknown registrants' receipt and theft of expensive equipment. (Pl.'s Mem. 4)

Following the May 19, 2010 incident, there was a spate of additional incidents involving individuals posing as Plaintiff's employees using the Beckcoult.com domain name. (Pl.'s Mem. 4) On May 28, 2010, one of Plaintiff's vendors reported having received a forged order for networking equipment in Plaintiff's name. (Compl. ¶ 33.) That vendor later reported having sent equipment worth approximately $32,000 to an address in Louisiana in response to those emails and forged documents. (Kirtland Decl. ¶ 9.)

Upon learning of the phishing fraud scheme, Plaintiff published a fraud alert on the beckmancoulter.com website. (Kirtland Decl. ¶ 11.) Plaintiff also began working with federal law enforcement agencies, including the Department of Homeland Security, to investigate the scheme. (Kirtland Decl. ¶ 11.) The law enforcement investigation revealed that at least some of the redirected hardware shipments were destined for the Republic of Benin, a country that borders Nigeria in West Africa. (Kirtland Decl. ¶ 11.) Plaintiff suggests that the Republic of Benin may be where the perpetrators of the fraud and Beckcoult.com registrants are located. (Pl.'s Mem. 5)

On July 9, 2010, fraudulent use of the Beckcoult.com domain name escalated further, prompting Plaintiff to file the instant action. (Pl.'s Mem. 5) On that date, Plaintiff learned that

an exact copy of its interactive coulterflow.com website had appeared at the Beckcoult.com website. (Compl. ¶ 33.) Plaintiff alleges that the copied website now allows the Doe Defendants to impersonate Plaintiff in a manner that encourages registered users of its website to submit private account information, including user names and passwords, directly to Defendants. (Compl. ¶ 38.)

After learning that the Doe Defendants were attempting to use the Beckcoult.com domain name to collect Plaintiff's customers login and password information directly, Plaintiff's counsel immediately notified the Beckcoult.com registrants. (Pl.'s Mem. 5) On July 9, 2010 and July 10, 2010, Plaintiff's counsel sent notice to the unknown registrant of the Beckcoult.com domain name at the email address and post office box listed with the registrar. (Compl. ¶ 40.) On July 12, 2010, Plaintiff learned that the Doe Defendants and unknown registrants of the Beckcoult.com domain name had changed their contact information with the registrar. (Compl. ¶ 43.) That same day, Plaintiff's counsel sent additional cease and desist correspondence to the registrants' updated email address. (Compl. ¶ 44.) The additional cease and desist correspondence email was returned as undeliverable. (Compl. ¶ 45.) On July 13, 2010, Plaintiff received notice that the Postal Service was unable to deliver the mail sent to the registrants' post office box. (Compl. ¶ 41.) To date, Plaintiff has not received any response from the Doe Defendants or the unknown registrants of the Beckcoult.com domain name. (Compl. ¶ 47.)

## II. LEGAL STANDARD

The standard for issuing a TRO is the same as that for issuing a preliminary injunction. *Brown Jordan Int'l, Inc. v. Mind's Eye Interiors, Inc.*, 236 F. Supp. 2d 1152, 1154 (D. Hawaii 2002); *Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995). A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 129 S.Ct. 365, 376 (2008). "The proper legal standard for preliminary injunctive relief requires a party to demonstrate [1] 'that he is likely to succeed on the merits, [2]

1  that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the
2  balance of equities tips in his favor, and [4] that an injunction is in the public interest.'"
3  *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing *Winter*, 129 S. Ct. at
4  374)).  The issuance of a preliminary injunction is committed to the discretion of the District
5  Court.  *Indep. Living Ctr.*, 572 F.3d at 651.
6       A TRO may be issued without notice to the adverse party *only if* "(A) specific facts in an
7  affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or
8  damage will result to the movant before the adverse party can be heard in opposition; and (B)
9  the movant's attorney certifies in writing any efforts made to give notice and the reasons why it
10 should not be required." Fed. R. Civ. P. 65(b)(1).  Moreover, in this district an applicant for a
11 TRO must give notice to the adverse party "[u]nless relieved by order of a Judge for good cause
12 shown, on or before the day of an *ex parte* motion for a temporary restraining order." Civ. L.R.
13 65-1(b).

### III. DISCUSSION

15      Plaintiff's complaint alleges seven claims for relief.  (Compl. 1-2) In seeking a TRO,
16 Plaintiff focuses on Defendants' alleged violation of the Anti-Cybersquatting Consumer
17 Protection Act, 15 U.S.C. § 1125(d)(2).  (Pl.'s Ex Parte Application for TRO 2)  The Court
18 concludes that Plaintiff has shown good cause for issuance of a temporary restraining order and
19 order to show cause re preliminary injunction.

20 **1.      PLAINTIFF IS ENTITLED TO A TRO**
21      **A.      Likelihood of success on the merits**
22      In order for a TRO to be granted, a plaintiff must show that it is likely to succeed on the
23 merits of a claim that would entitle it to the equitable remedy that it seeks.  *Stormans*, 586 F.3d
24 at 1127.  The Ninth Circuit has recognized that "cybersquatting occurs when a person other than
25 the trademark holder registers the domain name of a well known trademark and then attempts to
26 profit from this by either ransoming the domain name back to the trademark holder or by using
27 the domain name to divert business from the trademark holder to the domain name holder."
28

1  *Bosley Med. Inst., Inc. v. Kremer*, 402 F.3d 672, 680 (9th Cir. 2005). To prove a violation of the Anticybersquatting Consumer Protection Act provides, a plaintiff must show that (1) it owns a trademark that is "distinctive [or famous] at the time of registration of the domain name, (2) Defendants "registered, trafficked in, or used a domain name" that is "identical or confusingly similar" to Plaintiff's mark, and (3) Defendants had a bad faith intent to profit from Plaintiff's mark. 15 U.S.C. § 1125(d)(2); see also *Bosley Med. Inst., Inc.*, 402 F.3d at 681, citing *DaimlerChrysler v. The Net Inc.*, 388 F.3d 201, 204 (6th Cir.2004).

Plaintiff has established that it owns one or more of the referenced incontestable Marks. (Pl.'s Mem. 8) "Registered trademarks are presumed to be distinctive and should be afforded the utmost protection." *Americana Trading, Inc. v. Russ Berrie & Co.*, 966 F.2d 1284, 1287 (9th Cir. 1999); see also 15 U.S.C. § 1115(a) ("Any registration ... on the principal register ... shall be prima facie evidence of the validity of a registered mark"). It also is apparent that the Beckcoult.com domain name is confusingly similar to the Beckman Coulter® Mark. (Pl.'s Mem. 8) The Beckcoult.com domain name is an easily identifiable abbreviation of the Beckman Coulter® Mark, and is not materially distinguishable from the Beckman Coulter® Mark.

The ACPA lists nine factors that may be considered when determining whether bad faith intent to profit exists. See 15 U.S.C. § 1125(d)(B)(I). One such indication of bad faith occurs when a person intends to "divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark." 15 U.S.C. § 1125(d)(B)(I)(5). In the instant action, the evidence in the record suggests that Defendants used their perceived affiliation with Plaintiff to purchase expensive computer networking equipment and to capture Plaintiff's user's account information. (Kirtland Decl. ¶¶ 9, 17.) This appears to have been done for the sole purpose of diverting Plaintiff's customers away from Plaintiff's website for Defendants' own commercial gain.

### B.  Irreparable harm

Preliminary injunctive relief is appropriate where plaintiffs "demonstrate that irreparable injury is likely to occur in the absence of an injunction." *Johnson v. Couturier*, 572 F.3d 1067,

Case Number C 10-03110 JF
ORDER GRANTING APPLICATION FOR TEMPORARY RESTRAINING ORDER ETC.
(JFEX3)

1081 (9th Cir. 2009) (citing *Winter*, 129 S. Ct. at 375).  In a trademark infringement case, "[i]rreparable injury is ordinarily presumed upon a showing of a likelihood of success." *Super-Krete Int'l, Inc.*, 2010 U.S. Dist. LEXIS 50090, *26-27 (C.D. Cal. Apr. 22, 2010) (citing *Abercrombie & Fitch Co. v. Moose Creek, Inc.*, 486 F.3d 629, 633 (9th Cir. 2007).

### C. Balance of hardships

The Supreme Court has recognized that courts must "balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief."  *Amoco Production Co. v. Village of Gambell, AK*, 480 U.S. 531, 542 (1987).  Here, Plaintiff has not authorized Defendants to act on its behalf or to assume its identity for any purpose.  (Pl.'s Mem. 9)  There is no evidence that Defendants will incur any hardship from an order preventing further operation of the Beckcoult.com website until this litigation is resolved.  Accordingly, the balance of hardships tips sharply in favor of Plaintiff.

### D. Public interest

The public interest analysis for the issuance of a TRO requires courts to consider "whether there exists some critical public interest that would be injured by the grant of preliminary relief." Indep. *Living Ctr. Of S. Cal., Inc. v. Maxwell-Jolly*, 572 F.3d 644, 659 (9th Cir. 2009) (quoting *Hybritech Inc. v. Abbott Labs.,* 849 F.2d 1446, 1458 (Fed.Cir.1988)).  In the instant action, absent an injunction, the public as well as Plaintiff's customers stand to continue to be defrauded and suffer the theft of their personal information through Defendants' phishing fraud scheme. (Compl. ¶ 33;  Kirtland Decl. ¶¶ 9.)

### 2. PLAINTIFF MAY SERVE NOTICE BY EMAIL

Rule 65(b) of the Federal Rules of Civil Procedure authorizes courts to issue a TRO "without written or oral notice to the adverse party" when "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)(B).

In the instant action, Plaintiff's counsel has certified in writing that he has made multiple efforts to give Defendants notice.  Plaintiff's counsel also has explained adequately in writing why a TRO should issue without notice. (Compl. ¶ 40; Wisniewski Decl., ¶ 5.d.) Despite its

1 | reasonable efforts to give notice, Plaintiff has not received any response from Defendants.
2 | (Compl. ¶ 47; Wisniewski Decl., ¶ 5.g.)  Accordingly, the Court grants the requested leave to
3 | serve the complaint and notice of the TRO by email.

### IV. Conclusion

Pending the hearing on Plaintiff's motion for a preliminary injunction and further order of the Court, Defendants are hereby temporarily enjoined and restrained from operating or maintaining any website using the Beckcoult.com domain name or any other domain name owned or used by Plaintiff.  Plaintiff's request for leave to serve the complaint and notice of the TRO by email is granted.  A hearing on Plaintiff's motion for preliminary injunctive relief is scheduled for August 6, 2010, at 9:00 A.M.

**IT IS SO ORDERED**

DATED: July 26, 2010

_____
JEREMY FOGEL
United States District Judge